UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | Criminal No. 1: 21-cr-500 (CJN) |
| MICHAEL LEON BROCK ) | |
| ) | |
| Defendant ) | |

**DECLARATION OF ROGER I. ROOTS, J.D., PH.D., IN SUPPORT OF DEFENDANT MICHAEL LEON BROCK'S MOTION FOR CHANGE OF VENUE TO THE NORTHERN DISTRICT OF MISSISSIPPI, OXFORD DIVISION**

**I, Roger Roots, J.D., Ph.D., do hereby swear, certify and attest that the following facts are true and within my personal knowledge. I state these facts under penalties of perjury.**

1. My name is Roger Roots and I am a law partner with John Pierce, esq., the attorney for defendant Michael Brock in this case.

2. In addition to being a lawyer I am also a sociologist, holding a Ph.D. in that field of social science from the University of Nevada, Las Vegas.

3. I have done a great deal of background research regarding issues in cases arising from January 6, 2021, and have prepared for trials in January 6 cases and helped others prepare for trials in such cases.

As of August 1, 2023, I have personally witnessed jury selection in at least five January 6 trials (Nordean, Alberts, Thomas, Lesperance, and Barron). In all of these trials but the Thomas trial[1] it proved impossible to draw a jury of 12 unbiased jurors from pools of 50 or even 60

---

[1] Judge Friedrich in the Kenneth Joseph Thomas trial was more strict than other judges regarding jurors who expressed any hostility for J6ers, opting to allow the biased jurors to be (very properly) stricken for cause rather

potential jurors. I've watched as numerous jurors expressed hatred, contempt, predetermined judgment, and hostility toward Jan. 6 defendants. Only after judges and prosecutors pressured prospective jurors to "set their feelings aside" did the judges in those trials claim to have "rehabilitated" the prospective jurors to be qualified for final jury selection. And in each case, the final pool of allegedly "qualified" jurors remained so fundamentally biased in favor of the government that prosecutors were able to use their peremptory strikes to easily eliminate whatever small number of fair jurors remained.

I note that in the Thomas jury selection, the Court (Friedrich, J.) had to go through a second day of jury selection after the first full panel (of, I believe, 50) potential jurors failed to provide enough qualified jurors. The jury clerks had to go out to other trial courtrooms and round up rejected jurors from a civil case elsewhere in the building to

D.C.'s working class, blue-collar, or tradesman population is relatively small compared to D.C.'s households filled with professional class and civil servants. It seems that the city's bricklayers, plumbers, construction framers, seamstresses and cab drivers may reside disproportionately in Maryland or Virginia. Consequently, the District's jury pools prove to be overburdened by establishment households filled with lawyers, professionals, civil servants and bureaucrats who are most likely to detest former President Trump and Trump's supporters.

4. In each of these jury selections, I saw that the jury pools overwhelmingly favored the government, and that each of the trials were essentially rigged for conviction from the onset, due to the jury pool's composition. In the Proud Boy trial, the jurors even convicted defendants of damaging property which the defendants didn't even touch. The

---

than "rehabilitated" under pressure, with pretended claims that the hate-filled jurors could somehow set their hatred aside and be fair.

jury convicted my client, Dominic Pezzola, of destroying a pane of glass which another, unnamed individual, clearly broke. Codefendant Tarrio was convicted of aiding and abetting damaging property he never even saw, while being 30 miles away in a Baltimore hotel room.

5. Although these juries have acquitted defendants in a couple of counts, these were generally counts in which the evidence explicitly exonerated the defendants. These same juries convicted each defendant of every count where the government barely tried to show any evidence at all.

6. And, of course, January 6 trial juries in the U.S. District of D.C. have overwhelmingly convicted all Jan. 6ers of almost every count. Countless dozens of J6ers have been convicted by juries of "disorderly conduct" and "picketing and parading" where the defendants merely stood or walked in or near the Capitol.

7. Thus far, as of September 4, 2023, the per-case conviction rate for J6ers stands around 98%. This compares to average jury conviction rates of well below 75% in most jurisdictions in most years. Nationwide, some 69 percent of American defendants who plead not guilty are acquitted of *at least some* of the accusations against them, or have at least some counts dismissed. *See* Mike P.H. Chu, *Criminal Procedure Reform in the People's Republic of China*, 18 UCLA PAC. BASIN L.J. 157, 166 (2001).

8. The bias among the D.C. jury pools in favor of the prosecution is shown, established, and highlighted by all public opinion polling regarding January 6 among D.C. residents.

9. DC officials, and many DC jurors and prospective jurors, have repeatedly represented that all residents of DC are victims of the events of January 6. And this is of course factually indisputable, because D.C.'s commerce and economy was harmed significantly

throughout January 5 and 6 as there were curfews and ordered shut downs in which DC residents were made to shelter in place due to the events.

10. Further, **all of the officials of the District of Columbia** have publicly (and formally in court filings) pronounced that they and every resident are themselves victims of the rioters of January 6.

11. Jury selection in virtually every Jan. 6 trial has brought forth prospective jurors who say in open court that *they are victims* of January 6 protestors *merely on account of being DC residents*. This is a very prevalent view among DC residents, as established by polling.

12. An impartial jury is required under the Constitution and has been required since the times of common law. A criminal trial ordinarily should take place in the district where the offense was committed. U.S. Const, amend. VI; Fed. R. Crim. P. 18.

13. But here, in the context of January 6 cases, the prosecution contends that the crimes were crimes against national democracy.

14. The atmosphere in the District of Columbia is so prejudicial that the defendant cannot obtain a fair and impartial trial within the district in which the action is brought.

15. Although cases granting motions to transfer under Rule 21(a) are rare, the circumstances mandating the transfer in this case are unprecedented.

16. In the District of Columbia, an overwhelming 92% of adult voters are Democratic. Politics & Voting in Washington, District of Columbia, BEST PLACES (last visited Aug. 14, 2022), https://www.bestplaces.net/voting/city/district_of_columbia/washington.

17. At least three commissioned studies have shown an insurmountable bias in the DC jury pool.

18. In one poll commissioned from jury consultant John Zogby, it was found that almost 3 out of 4 among 400 D.C. residents said they "believe that any individual who was inside the Capitol on January 6, 2021 should be convicted of insurrection." See https://drive.google.com/file/d/17SOf08WbuCFgTzOmprwRlkWVojLysflQ/view .

19. Fully 95% were very or somewhat familiar with Jan 6th protest.

20. 66% agreed that Jan 6th posed a dire threat to our nation and democracy.

21. A second poll, conducted by Lux Research, selected four "test areas" — D.C., Florida, North Carolina and Virginia — to survey jury-qualified people.

22. The survey was commissioned by J6 defendant Thomas Caldwell. Here is a link to his filing.

    https://storage.courtlistener.com/recap/gov.uscourts.dcd.239217/gov.uscourts.dcd.239217.93.0.pdf

23. "Results from the Study show that the DC Community's attitude is unique among the Test Areas — and is decidedly negative toward [J6] Defendants," Lux said.

24. "The study shows that the DC Community is saturated with potential jurors who harbor actual bias against defendants."

25. 82% of DC respondents felt personally victimized by the events of Jan 6th.

26. 72% said they were likely to find the defendants guilty, even when given the choice that 'it is too early to decide.'

27. 62% of DC respondents believe that all or some of the Jan 6th events were racially motivated.

28. It is not just the defendant, but the whole community and even the government who are entitled to a fair trial. And fair trials for Jan. 6 allegations are all but impossible in the U.S. District of the District of Columbia.

I write these words under my oath, and under penalties of perjury,

*/s/ Roger I. Roots, J.D., Ph.D.*